UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lucila Martinez-Vivanco,　　　　　　　　　　Case No. 23-cv-1497 (JRT/DTS)

　　Petitioner,

v.　　　　　　　　　　　　　　　　　　　　**REPORT & RECOMMENDATION**

FCI Waseca Warden,

　　Respondent.

---

Petitioner Lucila Martinez-Vivanco petitions under 28 U.S.C. § 2241 seeking application of earned time credits under the First Step Act of 2018. Dkt. No. 1. Martinez-Vivanco also claims the Bureau of Prisons failed to consider her for pre-release custody under the Second Chance Act. *Id.* Respondent contends that Martinez-Vivanco is ineligible for application of earned time credits because she is subject to a final order of removal and the Bureau of Prisons considered her for pre-release placement but determined that transfer to a residential reentry center was inappropriate. Dkt. No. 7 at 4-8. For the following reasons, the Court recommends Martinez-Vivanco's petition be denied. Martinez-Vivanco has also filed two motions asking the Court to grant her petition, Dkt. Nos. 13, 17, which the Court denies as moot.

## FINDINGS OF FACT

Martinez-Vivanco is incarcerated at the Federal Correctional Institution in Waseca, Minnesota (FCI-Waseca), serving a 20-year sentence (with five years of supervision) for conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana and conspiracy to launder drug proceeds. Dkt. No. 8 ¶ 3. Martinez-Vivanco's projected

release date is June 4, 2024. Dkt. No. 8-1. At the time of Martinez-Vivanco's petition, she was subject to a final order of removal to Mexico, issued on February 28, 2018. Dkt. Nos. 8-4, 20-1.

## CONCLUSIONS OF LAW

**Time credits under the First Step Act**

The First Step Act (FSA) creates incentives for incarcerated persons to participate in evidence-based recidivism reduction programs (EBRRs) (18 U.S.C. § 3632(d)(4)). Individuals earn time credits (TCs) for days they spend in EBRRs, which they may apply to their sentences and enter prerelease custody or supervised release at an earlier time. *Id.* Pursuant to 18 U.S.C. § 3632(d)(4)(E)(i), however, "A prisoner is ineligible to apply time credits . . . if the prisoner is the subject of a final order of removal under any provision of the immigration laws." While an individual subject to a final order of removal may accrue time credits by participating in EBRRs, he or she cannot apply those credits to enter prerelease custody or supervised release at an earlier time. 18 U.S.C. § 3632(d)(4)(A).

Martinez-Vivanco acknowledges the existence of deportation-related proceedings but claims she is merely subject to an immigration "hold" rather than a final order of removal. Dkt. No. 1-1.[1] The Warden at FCI-Waseca, Michael Segal, incorrectly informed Martinez-Vivanco on March 7, 2023 that she was subject to a "lodged ICE detainer for possible deportation to Mexico." Dkt. No. 1-1. In fact, on April 10, 2018, Martinez-Vivanco was served with a Final Administrative Removal Order at FCI-Waseca. Dkt. Nos. 8-4, 20-21. This Order informed Martinez-Vivanco that she is "deportable as an alien convicted

---

[1] An inmate with a detainer or an unresolved immigration status may apply TCs towards pre-release custody and supervised release. *See* P.S. 5410.01 CN-1 (Feb. 6, 2023).

of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227 (a)(2)(A)(iii)." Dkt. No. 8-4.

The FSA precludes application of all TCs for an inmate subject to a final order of removal. 18 U.S.C. § 3632(d)(4)(E)(i). The text of the statute clearly and unambiguously asserts that a prisoner like Martinez-Vivanco who is subject to a final order of removal cannot apply any earned TCs. The Court recommends Martinez-Vivanco's petition be denied on that basis.

**Pre-release custody under the Second Chance Act**

Martinez-Vivanco also claims the Bureau of Prisons (BOP) never considered her for placement in a residential reentry center under the Second Chance Act (34 U.S.C. § 60501 *et seq.*). Dkt. No. 1 at 7. The Second Chance Act is intended to help offenders "establish a self-sustaining and law-abiding life by providing sufficient transitional services" and to "facilitate re-entry into the community." 34 U.S.C. § 60501(a)(5), (6). The program seeks to help offenders "rebuild ties" with their families and to "promote stable families and communities." *Id.* § 60501(a)(2). The BOP is obligated to formulate a plan of pre-release conditions for each incarcerated person, which may include placement in a residential reentry center, drug or alcohol treatment, or other accommodations. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). When formulating an inmate's pre-release plan, the BOP considers the following factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence: (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (b) recommending a type of penal or

correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b). As part of their pre-release plans, inmates may be considered for placement in a residential reentry center, but they are not entitled to such placement. *See United States v. Martinez-Gutierrez*, No. 09-cr-49(11), 2013 WL 1435154, at *3 (D. Minn. Apr. 9, 2013) ("Neither due process under the Fifth Amendment nor the Equal Protection Clause under the Fourteenth recognize a protectable interest in prerelease custody programs offered under the Second Chance Act, including for prisoners subject to deportation."). A final order for removal weighs heavily against placement in a residential reentry center. P.S. 7310.04 CN, Ch. 10(b) (Dec. 16, 1998) ("Inmates who are assigned a 'Deportable Alien' Public Safety Factor" "shall not ordinarily participate in [community corrections center] programs"). Moreover, courts lack jurisdiction to review the BOP's placement decisions. 18 U.S.C. § 3621(b)(5) ("[A] designation of a place of imprisonment under this subsection is not reviewable by any court.").

Pursuant to the Second Chance Act, the BOP reviewed Martinez-Vivanco's circumstances on September 29, 2022 and formulated an "Individualized Needs Plan" for her. Dkt. Nos. 9 ¶ 11, 9-4. Because Martinez Vivanco's has been assigned a Deportable Alien Public Safety Factor and served with a final order of removal, the team reviewing her case did not recommend her for placement in a residential reentry center. Dkt. No. 9-2. The Court lacks jurisdiction to review that placement decision. *See* 18 U.S.C. § 3621(b)(5). Therefore, the Court recommends Martinez-Vivanco's petition be denied as concerns the Second Chance Act.

4

**Evidentiary hearing**

Because the Court can resolve Martinez-Vivanco's habeas petition on the record, an evidentiary hearing is not necessary. *See Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983).

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS

1. Martinez-Vivanco's habeas petition [Dkt. No. 1] be DENIED.

2. Petitioner's motion to be heard and to have her 28 U.S.C. 2241 petition granted [Dkt. No. 13] be DENIED as moot.

3. Petitioner's motion to have her 28 U.S.C. 2241 petition granted [Dkt. No. 17] be DENIED as moot.

Dated: January 23, 2024         s/David T. Schultz  
                                                             DAVID T. SCHULTZ  
                                                             U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).